**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7|14|2020

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 13, 2020

**BY ECF**

*[handwritten]: I need an unredacted copy of the government's letter. The next conference is scheduled for July 30 at 2 pm. in this case. We will consider Mr. Solla's bail motion at that time.*

The Honorable Colleen McMahon
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *United States v. Ramon Solla*, 19 Cr. 740 (CM)

Dear Chief Judge McMahon:

The Government respectfully writes in opposition to defendant Ramon Solla's request for bond or a detention hearing, filed on July 6, 2020 (hereinafter "Mot."). The Court should deny the defendant's motion for pretrial release, as he has not met and cannot meet his burden of overcoming the presumption that there is no combination of conditions that would reasonably assure his continued appearance in this case or protect the safety of the community if he were released.

**I.   Background**

*[handwritten stamp]: MEMO ENDORSED*

On or about October 16, 2019, a Grand Jury in this district returned an indictment (the "Indictment") charging Solla with two counts of murder in connection with a drug offense, in violation of Title 21, United States Code, Section 848(e); and two counts of murder through use of a firearm, in violation of Title 18, United States Code, Section 924(j), in connection with the March 3, 1995 murders of Ricky Santiago and Christopher Torro in East Harlem. On October 17, 2019, Solla was arrested, presented and arraigned before U.S. Magistrate Judge Stewart D. Aaron, and consented to detention without prejudice to any future application for bail.

The murders charged in the Indictment arose out of internal disputes within a set of drug dealers who controlled turf on 106th Street between 1st Avenue and 2nd Avenue from approximately 1994 through 1995. During that period, two crews shared drug territory on that particular block. Around early 1995, tensions began to rise between the crews over profits as well as who had the right to control the market for particular types of drugs. The victims, Torro and Santiago, ended up on the opposite side of this rift from Solla.

On March 3, 1995 Solla and his allies lured Torro and Santiago to the roof of 250 East 105th Street, where Solla shot each of them multiple times in the head. Both victims were 17 years old at the time of their deaths. Their bodies were then thrown onto the roof of a neighboring high school and found there by members of the New York Police Department ("NYPD").

Honorable Colleen McMahon
Chief United States District Judge
July 13, 2020
Page 2

On or about January 29, 2020, the Attorney General authorized and directed this Office not to seek the death penalty in this case. The next conference is scheduled for 2 p.m. on July 30, 2020.

## II.    Applicable Law

### *Factors Impacting Detention Analysis*

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. *See, e.g.*, *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). A finding of dangerousness must be supported by clear and convincing evidence. *See, e.g.*, *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995); *Chimurenga*, 760 F.2d at 405. In addition, a court may also order detention if there is "a serious risk that the [defendant] will . . . attempt to obstruct justice, or . . . to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B); *see also United States v. LaFontaine*, 210 F.3d 125, 134-5 (2d Cir. 2000).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the defendant, including the person's "character . . . [and] financial resources"; and (4) the seriousness of the danger posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. *See* 18 U.S.C. § 3142(f)(2); *see also LaFontaine*, 210 F.3d at 130-31; *Ferranti*, 66 F.3d at 542; *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). Additionally, where, as here, a defendant is charged with committing an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more, it shall be presumed, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A).  Even when a defendant "has met his burden of production" to rebut the presumption favoring detention, that presumption "does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *United States* v. *Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (reversing bail and denying release of defendants involved in conspiracy to commit a single armed drug robbery, which never came to fruition).

Honorable Colleen McMahon
Chief United States District Judge
July 13, 2020
Page 3

*Temporary Release for Compelling Reasons*

Separately, a defendant who has been ordered detained pretrial can be temporarily released under 18 U.S.C. § 3142(i) if he demonstrates that "such release [is] necessary for preparation of the person's defense or for another compelling reason." "This provision has been used sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, 2020 WL 1323036, at \*2 (E.D.N.Y. Mar. 20, 2020) (citing *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (releasing defendant to the custody of the United States Marshals Service at a hospital to receive end-of-life care for terminal AIDS that could not be provided by the Bureau of Prisons)). In evaluating whether release is justified for a "compelling reason," the Court must "balanc[e] the reasons advanced for release against the risks posed by release." *United States v. Chambers*, No. 20-CR-135, 2020 WL 1530746, at \*1 (S.D.N.Y. Mar. 31, 2020).

## III.    The Defendant's Motion for Bail

Solla requests release on a "reasonable bond to be signed by financially responsible persons," although he proffers only one such person willing to sign the bond, his sister. (Mot. 2). He notes that, while other family members are willing to sign a bond for moral suasion, these other family members may not be viewed as financially responsible. Solla proposes self-quarantining alone in one of the family's two apartments, after which he and his wife, from whom he is separated, could determine "an appropriate living situation between the two apartments." (*Id.*).

Solla argues that he is not a flight risk, citing his longtime family ties to New York City and to the United States, as well as his poor health. He further maintains that he is not a danger to the community, noting that his prior convictions were for conduct committed many years ago. In the alternative, Solla asks for temporary release from pretrial custody due to the coronavirus pandemic viewed in conjunction with his own physical and mental health risk factors.

## IV.    Discussion

The defendant's application for bail should be denied pursuant to both Sections 3142(e) and (i), because there is no condition or combination of conditions of release that will reasonably assure the safety of the community, *see* 18 U.S.C. § 3142(e), and because the defendant has failed to demonstrate a "compelling reason" necessitating his release, *see* 18 U.S.C. § 3142(i).

### A.  Bail Should Be Denied Based on All of the Section 3142(g) Factors

The defendant cannot overcome the presumption that no condition or combination of conditions will ensure the safety of the community and his appearance in court. Even without the presumption, the defendant's offense conduct, criminal history, the weight of the evidence, and the defendant's incentives to flee all support the same conclusion.

Honorable Colleen McMahon
Chief United States District Judge
July 13, 2020
Page 4

*The Charges and Applicable Penalties*

The charges here, as well as the strength of the Government's evidence, soundly support the conclusion that Solla is both a flight risk and a danger to the community. The crimes charged in the Indictment could not be more serious, and the murders here reflect particularly egregious conduct. The Government expects to prove at a trial that Solla shot two 17-year-olds multiple times in the head and face as part of a long-simmering dispute over drug territory and profit. In short, Solla's offense conduct is extremely serious and alone supports detention.

Solla's sentencing exposure gives him significant reason to flee. He faces life imprisonment, with a 30-year mandatory minimum penalty, if convicted of the charges in the Indictment—which, considering his age of 46 years, could amount to the substantial majority of the rest of Solla's life. The possibility of a "severe sentence" weights in favor of detention. *See Jackson*, 823 F.2d at 7; *see also United States v. Cisneros*, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

*Solla's Criminal History*

Solla has three prior criminal convictions, including one felony conviction. On December 6, 1996, he was convicted of False Report Incident in the Third Degree, in violation of New York Penal Law § 240.50(03), a misdemeanor, and sentenced to one year of probation. On October 21, 1999, he was convicted of Criminal Sale of a Controlled Substance in the Third Degree, Narcotic Drug, in violation of New York Penal Law § 220.39(01), a felony, and sentenced to two to six years' imprisonment. On July 8, 2009, Solla was convicted of Criminal Possession of a Weapon in the Fourth Degree, a misdemeanor, and sentenced to conditional discharge.

In his application for bail, Solla discounts these convictions because they are old (Mot. 3), but what he fails to note is that each one was committed *after* the double homicide charged in the Indictment, demonstrating that Solla persisted in criminal conduct, including felony drug dealing, even after committing the tragic murders of two of his drug rivals in 1995. Furthermore, contrary to the defendant's argument, the fact that Solla's most recent conviction—for weapon possession—was in 2009 does not rebut the presumption that he is a danger to the community. The Government need not "present a record of violence or dangerous conduct in order to justify detaining a defendant on grounds of dangerousness." *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991).

*The Government's Case*

Likewise, the strength and nature of the Government's case weighs in favor of continued detention. The defendant is not incorrect that Government's case is primarily supported by witness testimony, including expected testimony from cooperating witnesses, civilian witnesses, and police officers. However, the Government expects to call numerous such witnesses at trial, and

Honorable Colleen McMahon
Chief United States District Judge
July 13, 2020
Page 5

the fact that its case relies in significant part on witness testimony does not indicate that the case is at all weak. It is well established that there is no requirement that the Government prove its case by any particular means, such as cell site data.

Moreover, "[g]iven the nature of these charges, and defendant's belief as stated in this motion that the evidence against him consists solely of others involved in his criminal conduct, there is a preponderance of the evidence to find serious risk that defendant will attempt to intimidate or harm those believed to be witnesses were defendant to be released." *United States v. Amador-Rios*, No. 18CR398S3RRM, 2020 WL 1849687, at *2 (E.D.N.Y. Apr. 12, 2020) (citing 18 U.S.C. § 3142(f)(2)(B), which provides that a court may order detention if there is "a serious risk that the [defendant] will . . . attempt to obstruct justice, or . . . threaten, injure, or intimidate, a prospective witness or juror")); *see also LaFontaine*, 210 F.3d at 134-5 (upholding finding that defendant's attempts to influence a witness's testimony constitute danger to the community that would support detention) (collecting cases).

*The Defendant's Personal Circumstances and Proposed Package*

The Government does not dispute that Solla grew up in New York City and has family in the area. Notwithstanding, he remains a flight risk due to the nature of the charges and penalties, the strength of the evidence, and the incentive to flee. Solla's proposed package does virtually nothing to rebut the presumption that he is a flight risk and a danger to the community. Solla proffers only one financially responsible person available to sign a bond, his sister, an MTA employee. (Mot. 2). He notes that additional family members who lack financial responsibility would be willing to sign for moral suasion, but, tellingly, he proffers no members of the community beyond his immediate family, such as neighbors, friends, co-workers, employers, or religious or secular community group members. Indeed, his assertion that he has longstanding community ties appears to be based on the length of time he has lived in the City, rather than on any meaningful ties at all.

Even if the Court were to find that the existence of one financially responsible co-signer were adequate to address Solla's flight risk, "[a] bail package may adequately assure a defendant's appearance in court while failing to reasonably assure the safety of the community." *Rodriguez*, 950 F.2d at 89. Here, Solla has offered virtually nothing to rebut the presumption that he is a danger to the community, based on the nature and circumstances of the crimes charged, the weight and nature of the Government's evidence, and the gravity of the danger posed by his release. Solla's motion for bail is similar to one recently advanced in a cold-case murder in the Eastern District of New York, in which the court found that, notwithstanding the defendant's limited burden of production, he did "not seriously endeavor to rebut the presumption that he poses a danger to the community beyond noting that the crimes alleged in the indictment were committed nearly 30 years ago and the fact that, since his release from state custody in 2003, [the defendant's] interactions with the criminal justice system have been few and limited to relatively minor offenses." *United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *1 (E.D.N.Y. Mar. 20, 2020) (concluding that the defendant had "not met his burden to rebut the presumption of danger to the community that attaches based on the acts with which [he] has been charged, *i.e.* murdering two people in public places").

Honorable Colleen McMahon
Chief United States District Judge
July 13, 2020
Page 6

Just so here—Solla poses a significant danger to the community and risk of flight that cannot be mitigated through any bail conditions set by the Court. Accordingly, the defendant's application for bail should be denied based on the factors set forth in 18 U.S.C. § 3142(g).

## B. Solla Has Not Demonstrated Compelling Reasons for Temporary Release

In the face of overwhelming evidence regarding Solla's danger to the community and risk of flight, he asserts that the COVID-19 pandemic alters the analysis under Section 3142(g) in favor of release, and in the alternative justifies his temporary release because of his physical and mental health conditions. Solla has not demonstrated "compelling" reasons for temporary release, and that application should be denied largely for the same reasons previously discussed.

Solla asserts that his release is warranted because
and has undiagnosed, untreated depression. None of these conditions calls for release under any circumstances, but temporary release is particularly unwarranted in light of the significant danger and flight risks. "Indeed, he has not even met § 3142(i)'s threshold requirement of identifying an 'appropriate person' in whose custody he would be placed." *United States v. Irizzary*, No. 17-CR-283(LAP), 2020 WL 1705424, at *2 (S.D.N.Y. Apr. 8, 2020). Solla proposes that his sister would co-sign a bond but does not assert that she would serve as custodian for him, nor proffer any reasons why she might be an appropriate custodian. Rather, he asks the Court to release him to self-quarantine alone, to be followed by an undescribed living situation to be developed at a later date.

Nor does Solla's health amount to a "compelling reason" for his release. As reflected in Solla's BOP medical records, attached here as Exhibit A, his medical conditions are being well treated and controlled in custody.[1] Solla asserts that the Centers for Disease Control and Prevention believes that              might be at an increased risk for severe illness from COVID-19. (Mot. 4). The CDC guidance is somewhat more nuanced: It indicates that "[a]t the present time, we have no specific information about the risk of COVID-19 in              [2] . (Ex. A at 2). He is currently taking four medications to              , (*id.* at 2-3), and, contrary to the concerns he raised both to BOP medical staff, (*id.* at 1), and in the instant motion, (Mot. 4), there is no indication that Solla has received that medication irregularly. (Ex. A at 59-62). In short, Solla's expressed "feel[ing]" that              better cared for at home than in prison and that he should be granted bail for that reason does not appear to have basis in fact. (*Id.* at 1). At his most recent medical appointment less than two months ago.

---

[1] Due to the sensitive nature of the medical documents, they are not being filed on ECF. Likewise, the Government has made limited redactions to the version of this letter filed on ECF that mirror the defendant's own redactions; namely, they redact sensitive information identifying the defendant's particular physical health ailments but not his mental health issues.

[2] *See* https://www.cdc.gov/coronavirus              last accessed July 11, 2020.

Honorable Colleen McMahon
Chief United States District Judge
July 13, 2020
Page 7

(*Id.*). A follow-up was scheduled for three months from
that appointment. (*Id.* at 3).

Likewise, neither Solla's alleged history of depression nor ████████ provide a basis
for his release. Solla does not appear to have requested or received treatment for depression either
prior to his arrest or since. (*See* Mot. 3; Ex. A at 36, 23 ("states he feels OK in general, but is
worried about his legal case, but he has a good lawyer. He denies to be suicidal or having
hallucinations")). The Government is aware of no reason why MCC would not be able to provide
mental health treatment should Solla need and want it. Likewise, MCC is aware of and has
consistently treated ████████████████████████████████ (*E.g.*, Ex. A at 1, 9, 23).

## V.   Conclusion

There is no condition or combination of conditions of release that will reasonably assure
the safety of the community his continued appearance in Court, and Solla has failed to demonstrate
a compelling reasons necessitating any temporary release. The Government respectfully proposes
that the issue of Solla's bail be taken up at the previously scheduled conference on July 30, 2020,
at which time his application for bail and for temporary release should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: ___/s/ Allison Nichols_____
    Maurene Comey & Allison Nichols
    Assistant United States Attorneys
    Southern District of New York
    Tel: (212) 637-2324 / 2366

Cc:   Counsel of record (by ECF)

Exhibit