UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

UNITED STATES OF AMERICA,

    -against-

RAMON SOLLA,

       Defendant.

—————————————————————— x

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 12-2-21 |

19 Cr. 740 (CM)

## DECISION ON THE GOVERNMENT'S *IN LIMINE* MOTIONS

McMahon, J.:

    The Indictment in this case charges Ramon Solla in four counts: Counts One and Two charge Solla with the murders of Ricky Santiago and Christopher Torro, respectively, through the use of a firearm on or about March 3, 1995, in violation of Title 18, United States Code, Sections 924(j) and 2. Counts Three and Four charge Solla with committing the Santiago and Torro murders, respectively, while engaged in a conspiracy to distribute one kilogram and more of heroin, in violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.

    The trial is scheduled to begin December 7, 2021.

    Before the Court are motions *in limine* filed by the Government asking the Court to, *inter alia*, make various evidentiary rulings prior to trial.

### The Government's Case

    According to the Government:

#### A.    Drug Dealing

    From approximately 1994 through 1995, two crews shared drug territory on the block

1

of 106th Street between 1st Avenue and 2nd Avenue in Manhattan (the "Block"). One crew occupied territory closer to 1st Avenue and was led by Mark Rodriguez. The second crew occupied territory closer to 2nd Avenue and was led by Carmelo Sanchez. By agreement, both crews were permitted to sell heroin on their respective sides of the Block.

Solla was a member of Rodriguez's crew, along with Carlos Alvarez, Amado Vega, and Nathaniel Parker. The murder victims, Ricky Santiago and Christopher Torro, were among the kids in Rodriguez's crew who actually conducted the hand-to-hand sales. The crew sold heroin by operating in shifts every day from 1994 through March 1995, distributing quantities far exceeding one kilogram of heroin.

Around early 1995, tensions began to rise between Rodriguez and Alvarez, caused, at least in part, by trouble they were having with Sanchez. For example, Rodriguez believed that Alvarez had burglarized his home and stolen drug proceeds. As a result, when Rodriguez learned that Sanchez was planning to kill both Rodriguez and Alvarez, Rodriguez fled the Block but did not warn Alvarez. Ultimately, members of Rodriguez's crew took sides: Torro and Santiago sided with Rodriguez, while Solla, Vega, and Parker sided with Alvarez.

### B.   Murders of Santiago and Torro

At some point around early March 1995, Rodriguez tasked Santiago with killing Alvarez and arranged for Santiago to get a gun for this purpose. Torro agreed to participate. The night of the murders, Santiago went out with a firearm and wearing a bullet-proof vest. He, Torro, Alvarez, Solla, Vega, and Parker met up and spent time at a bar on 2nd Avenue near 104th Street. Eventually, they left the bar and walked to 250 East 105th Street, a residential building where Parker's girlfriend lived.

The group ended up on the roof. Once on the roof, Solla was able to take the gun from

2

Santiago and then used it to shoot both Santiago and Torro multiple times in the face and head. Solla, Alvarez, Vega, and Parker threw the victims' bodies onto the rooftop of the neighboring

high school located at 238 East 105th Street, which was lower than the roof of 250 East 105th Street. At some point, Solla jumped or fell down to the roof of the high school where the bodies landed. In doing so, Solla injured his leg and walked with a limp for a period of time after the murders.

## C.    The Government's Proof at Trial

The Government expects to establish Solla's participation in the large-scale heroin conspiracy through the testimony of multiple witnesses involved in selling drugs on the Block during 1994 and 1995. These witnesses will also testify about the tensions between Rodriguez and Alvarez that arose in early 1995 and about Rodriguez tasking Santiago and Torro with killing Alvarez and providing them with a gun for this purpose. Multiple witnesses, including those uninvolved in drug-trafficking, are expected to testify to seeing the victims with Solla, Alvarez, Parker, and Vega on the night of the murders, and to seeing Santiago with a firearm and wearing a bullet-proof vest that night. Multiple witnesses are expected to testify that in the days and years after the murders, Solla admitted to his participation in the murders.

The Government expects to call one or more law enforcement witnesses who responded to the crime scene on the night of the murders, including one who will testify about collecting .9 mm shell casings from the scene. Through these witnesses, the Government will admit crime scene photographs, a sketch, and a video taken of the scene, which together will illustrate where the bodies were found, including their positioning as consistent with having been thrown off the roof of 250 East 105th Street onto neighboring 238 East 105th Street, and the isolated nature

3

of the rooftop location where the bodies were found. Additionally, the Government expects to call the medical examiner who performed the Santiago and Torro autopsies, who will testify about the cause and manner of death, as well as to give his opinion about the trajectory and distance of the gunshots that caused each of the victims' gunshot wounds.

*United States v Ramon Solla*, 19 CR 740 (CM0 (Government *In Limine* Motion at 2-4, Dkt. No. 38)

## The Government's Motions:

The Government asks the Court to rule pretrial that:

(1) certain out of court statements by non-testifying declarants are admissible;

(2) the defense is precluded from cross examining Government witnesses on certain topics that the Government believes are prejudicial and do not bear on the witnesses' credibility;

(3) certain evidence the Government believes the defense might offer be excluded, as inadmissible hearsay; and

(4) cross-examination of the Government's case agent be limited to the scope of the agent's direct testimony.

*United States v Ramon Solla*, 19 CR 740 (CM0 (Government *In Limine* Motion, Dkt. No. 38).[1]

### I. *Various Out of Court Statements by Non-Testifying Declarants*

The Government says that it anticipates offering out of court statements by non-testifying declarants through the testimony of several witnesses; it is the position of the Government that each of the statements of the non-testifying declarants is either not hearsay or

---

[1] The Government submitted a supplemental *in limine* motion, dated November 16, 2021 (Dkt. No. 40), to request rulings limiting the cross- examination of a recently-identified Government cooperating witness ("CW-2") with respect to "(1) criminal conduct; (2) a mental health diagnosis; and (3) personal drug use. The Court has considered the Government's supplemental motion and the rulings of the Court made herein pertain to the cross-examination of CW-2, as well as the other Government witnesses.

is admissible as exceptions to the rule against hearsay. The Government has offered in its motion several examples of the testimony it is seeking to have admitted, but says it reserves the right to offer at trial other admissions by the defendant and other out-of-court statements by non-testifying declarants that are not briefed in its motion.

(A) *Rumors about Solla's Participation in the Murders*

According to the Government: Both CW-1 and Witness-1 are expected to testify that they heard rumors that Solla was responsible for killing Santiago and Torro, which prompted them to confront Solla, who then admitted his culpability. CW-1, a longtime friend of Solla, is expected to testify that in 1995, after the murders, it was more difficult to sell drugs on 105th Street because of increase policing of the block. When CW-1 began hearing rumors that Solla was responsible for the Santiago and Torro murders, he confronted Solla, who admitted his responsibility. CW-1 will further testify that over the course of subsequent conversations, Solla provided additional details about his role in the murders.

Witness-1, who used to sell drugs in the same neighborhood as Solla, is expected to testify that in 1995, after the murders, both he and Solla were attempting to sell drugs at the building where the murders occurred. Having heard rumors that Solla was responsible for the Santiago and Torres murders, Witness-1 thought it was brazen of Solla to sell drugs at the building. Witness-1 confronted Solla, who admitted his responsibility.

The Government argues that the rumors that prompted CW-1 and Witness-1 to confront Solla are not hearsay, as they will not be offered for their truth, citing Fed. R. Evid. 801(c) (defining hearsay as an out of court statement offered "to prove the truth of the matter asserted in the statement"). The Government contends that the evidence about the rumors is relevant to show CW-1's and Witness-1's state of mind and explain why they initiated a conversation with

5

Solla about the murders. *See generally Naumovski v. Binghamton Univ., State Univ. of New York*, No. 3:11-CV-1097, 2019 WL 5445346, at *1 (N.D.N.Y. Oct. 24, 2019) (Evidence about the rumors admissible where plaintiff "does not seek to prove the truth of the rumors, only that the rumors existed. The alleged rumors are relevant to show defendants' awareness of . . . unlawful conduct, as well as their response or lack thereof to plaintiff's concerns, and the effect that any rumors had on plaintiff."). Government argues that without this important context, the jury will be left with the false impression that CW-1 and Witness-1 confronted Solla about the murders entirely out of the blue—an implausible scenario likely to be viewed with suspicion by the jury.

It is defendant's position that the background information the Government will be introducing about events leading up to the murders will make it entirely plausible for CW-1 and Witness-1 to confront Solla about the murders. Defendant argues that the probative value of "unnecessary testimony about unspecified, unarticulated rumors would be substantially outweighed by the danger of unfair prejudice and deny Solla his Constitutional right to confront his accusers."

**Ruling**: The statements are not hearsay. The fact that two witnesses heard rumors about Solla's involvement is being offered, not to prove the truth of the matter asserted, but to explain why the witnesses confronted Solla, who then admitted his participation– an admission that is without question admissible. Whether the Government has other evidence that could make the confrontations plausible is of no moment, because, as proffered by the Government, tensions on the street and the formation of factions were not the reasons why they engaged Solla in a conversation about the murders of Santiago and Torro. Even if they were, the Government is entitled to introduce any admissible evidence in order to proof its case in its own way. Nor does

6

the fact that multiple witnesses are expected to testify that Solla was seen leaving the Marina Bar with Santiago and Torro just prior to the fatal shootings, after which gunshots rang out. (Gov't Motion at 4), mean that the Government should be precluded from introducing otherwise admissible evidence about the crime.

(B) *Statements About Dispute Leading to the Murders*

The Government says that it intends offer witness testimony to show that, in 1995, tensions began to rise between Rodriguez and Alvarez, and that when things came to a head, Rodriguez sent Santiago and Torro to kill Alvarez—but, Solla gained control of their gun, executing Santiago and Torro instead.

Witness-2 was a member of Sanchez's crew on East 106th Street and was friendly with Rodriguez and knew other members of Rodriguez's crew. His testimony would include the

following:

- Witness-2 was present for disputes between Rodriguez and Alvarez during which (i) Rodriguez accused Alvarez of robbing his home and (ii) Alvarez accused Rodriguez of knowing about Sanchez's plan to kill both Rodriguez and Alvarez and failing to warn Alvarez of the same.

- Rodriguez told Witness-2 on more than one occasion that he wanted to have Alvarez killed.

- Witness-2 was present when Rodriguez attempted to hire someone outside the crew ("Person-1") to kill Alvarez.

- Witness-2 was present when Rodriguez offered Santiago money and an improved position in the crew in exchange for killing Alvarez, and both Santiago and Torro agreed to carry out the murder.

- Rodriguez asked Witness-2 for assistance in obtaining a gun for Santiago, which Witness-2 did.

Defendant does not object to the proffered evidence in this section, but says he reserves

his right to object if the Government changes the content of the proffered statements.

**Ruling**: This is a perfect example of why hearsay objections should, in the ordinary course, be dealt with at trial, not in *in limine* motions. If there is no objection to the statements, they will be admitted. Statements by Rodriguez about his desire to kill Alvarez, and statements by both Rodriguez and Alvarez regarding how they had each been wronged by the other, are admissible to show the men's respective states of mind and the fact of their dispute. The fact of the dispute (whatever the dispute's actual merits) is relevant because it is that dispute that led to a schism within Rodriguez's crew and ultimately to Santiago's and Toro's ending up on the roof of 250 East 105th Street with a gun, intending to kill Alvarez.

Similarly, Rodriguez's offers, first to Person-1 and then to Santiago and Torro, to kill Alvarez for money are admissible to show that Rodriguez wanted to kill Alvarez. Whether Rodriguez in fact intended to follow through on his promises of money or increased position in the crew in exchange for Alvarez's murder is immaterial. Rather, it is the fact of the offer that is relevant to show that Rodriguez sought to have Alvarez killed. Likewise, Santiago and Torro's acceptance of the offer demonstrates their respective states of mind—that they intended to kill Alvarez for Rodriguez.

Rodriguez's request that Witness-2 obtain a gun for Santiago and Torro to use in the murder is admissible because an inquiry is not hearsay. It explains why Witness-2 obtained the gun. *Dominguez-Gabriel*, 511 F. App'x at 20; *Oguns*, 921 F.2d at 449.

(C) *Statements by Santiago on the Night of the Murders*

The Government intends to offer certain statements made by Santiago on the night of the murders. Witness-3, a relative of Santiago, is expected to testify that when she saw Santiago earlier that night, Santiago was wearing a bullet-proof vest and carrying a firearm and told her, in substance, "It's either them or me." Witness-3 is further expected to testify that Santiago told her

8

that he was heading to the bar. Witness-2 is expected to testify that he saw Santiago and others at the bar on the night of the murders and that Santiago told Witness-2, in substance, that he was going to wait until Alvarez showed up and then "do what I'm gonna do."

Defendant appears to defer any objection to this evidence "Based upon further review of the 3500 materials and the Government's evidence as trial, the defense reserves the right to object to these statements being offered into evidence."

**Ruling**: Deferred until there is an objection.

(D) *Third Party Questions as Context for Solla's Statement*

According to the Government, Witness-2 will testify that, after the murders, Solla had a brace on his leg and a third-party asked, in substance, "What happened, you fell from the roof?" Witness-2 will testify that the question caused Solla offense and that Solla responded, in substance, "Don't be saying shit like that, that's how people get in trouble."

**Ruling**: The third-party's question is admissible because inquiries are not assertions and therefore cannot be hearsay. *Dominguez- Gabriel*, 511 F. App'x at 20; *Oguns*, 921 F.2d at 449. Solla's response is admissible as a statement by a party-opponent. Fed. R. Evid. 801(d)(2)(A).

**II. *Motion to Preclude Cross-Examination Regarding Certain Matters***

The Government seeks a ruling limiting the cross-examination of Government cooperating and civilian witnesses with respect to the following topics: (1) criminal conduct that does not bear on their respective characters for truthfulness; (2) unduly prejudicial details about prior criminal conduct; (3) mental health diagnoses and treatment that did not affect their ability to perceive the events about which they are expected to testify and that will not affect their capacity to testify at the time of trial; and (4) personal drug use.

Regarding its law enforcement witnesses, the Government asks that the defendant be precluded from cross-examining law enforcement witnesses about conduct and discipline that does not bear on character for truthfulness.

Counsel for the defense says that given the limited amount of 3500 materials and records they received thus far they are not in a position to respond fully to the Government's motion, but acknowledges the limitations Fed. R. Evid. 608 and 609 place on the cross examination of witnesses respective characters for truthfulness. Counsel says that the "absent further ruling from the Court, the defense agrees not to raise these issues during its opening statement."

**Ruling**: The matter will abide rulings at the trial, which is where the objections should be dealt with. I accept the defense offer to omit mention of these matters from the defendant's opening statement. The Court does note, however, that much, if not all, of the criminal conduct committed by the Government's witnesses appears to be properly excluded from cross-examination under Fed. R. Evid. 608 and 609.

### III. The Government's Fear that the Court will Allow the Defense to Elicit Hearsay

The Government seeks advance ruling on what "it believes to be straightforward applications of the prohibition against hearsay. *See* Fed. R. Evid. 802." Govt Motion at 22-23. The Government says that "it is moving now not because of the issue's complexity, but because if put before the jury in the form of a leading question during cross-examination, an objection would not suffice to unring the bell." *Id.* There are two areas in particular that the Government fears the defendant will attempt to exploit hearsay testimony.

*First*, according to the Government, it has disclosed to the defense statements of several individuals are not being called as Government witnesses, but who spoke with law enforcement

10

during the investigation following the Santiago and Torro murders. The Government wants to be sure that the defendant will not be permitted to introduce these hearsay statements by positing them as facts during cross-examination. The Government provides the following examples: One person anonymously called the NYPD Crime Stoppers unit to report that the person who killed "the two guys on the roof" was named Marvin, and another individual interviewed by NYPD in 2004 relayed that a friend had told him that Santiago and Torro were killed by a man named Tyson.

*Second*, the Government fears that the defense will attempt to elicit defendant's own prior statements through the testimony of other witnesses.

**Ruling**: The Government can rest assured that the Court will enforce the rules of evidence, including the prohibition against hearsay. Defense counsel will not be permitted to introduce out-of-court statements—which, unless the declarants are called to testify, remain hearsay—by positing them **as facts** during cross-examination. However, if the defense— having been apprised of the Marvin statement—wants to call the individual who made the statement, or offer other admissible evidence based on that disclosure, it is free to do so. The Court is loathed to trample on defendant's Sixth Amendment Confrontation Clause right by precluding defendant from introducing **relevant** and **admissible** evidence that suggests that law enforcement failed to thoroughly pursue other suspects or otherwise investigate the case.[2]

---

[2] The Court dealt with this very issue in the context of a State habeas petition. *See Alvarez v. Ercole*, 763 F.3d 223 (2d Cir. 2014), (Respondents appeal the decision of the District Court for the Southern District of New York (McMahon, J.) to grant Petitioner-Appellee Julio Alvarez a writ of habeas corpus under 28 U.S.C. § 2254 based on the New York state trial court's violations of Alvarez's Sixth Amendment Confrontation Clause right. Alvarez was convicted of manslaughter and assault for a 2002 shooting that killed Bronx drug dealer Daniel Colon and wounded two others. . . . At trial, the state court prohibited Alvarez from questioning a detective as to whether the police had pursued provided leads contained in an investigative report. It did so on the ground that the proffered cross-examination would lead to the introduction of inadmissible hearsay, and also that the proposed line of questioning had the potential to confuse the jury due to the purportedly insufficient connection between the cross-

11

As for defendant's statements, the defense will not be permitted to elicit Solla's own out-of-court statements through the testimony of other witnesses. To the extent the Government intends to offer limited portions of the defendant's 2019 videotaped post-arrest interview, the Court will hear from the defense as to whether other portions of the interviewed should be played for the jury pursuant to the Rule of Completeness.

### IV. Cross-Examination of the Case Agent

The Government intends to call a case agent for the limited purpose of authenticating portions of the defendant's 2019 post-arrest statement, as well as portions of recordings of the defendant made by a confidential source. The Government argues that the defense should be precluded from exploiting the fact that the agent who can authenticate these recordings also happens to be a case agent with broader responsibility for investigating the Santiago and Torro murders. It is the Government's position that wide-ranging cross-examination regarding the investigation carries a significant risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

The defense says that although it received receives the case agent's 3500 material, they are not in a position to respond to this portion of the Government's motion.

Rule 611(b) of the Federal Rules of Evidence limits the scope of cross-examination "to the subject matter of the direct examination and matters affecting the credibility of the witness."

---

examination and Colon's death. Because the trial court erred when it excluded all cross-examination related to the report, and because this error denied Alvarez evidence that was essential to his defense, we AFFIRM the District Court's order granting Alvarez's habeas petition.).

12

*See Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 110 (2d Cir. 2012). The fact that the witness is a law enforcement agent who had wide involvement in an investigation of the defendant does not expand the scope of permissible cross-examination. *See, e.g.*, *United States v. Koskerides*, 877 F.2d 1129, 1136 (2d Cir. 1989) (affirming district court's limitation of cross-examination of case agents to scope of direct testimony); *United States v. McLaughlin*, 957 F.2d 12, 18 (1st Cir. 1992) (affirming limitation of cross-examination of government agents to scope of direct because "a party has no right, unless the court in the exercise of its discretion allows, to cross-examine a witness beyond the subject matter of his direct examination and beyond matters affecting credibility."); *United States v. Adeniyi*, 03 Cr. 86 (LTS), 2004 WL 1077963, at \*3 (S.D.N.Y. May 12, 2004) ("The Court is also unpersuaded by Defendant's apparent contention that [the case agent's] acknowledgment during direct examination that he had participated in an investigation of Defendant, coupled with [the case agent's] testimony regarding certain specific aspects of that investigation, combined to give defense counsel carte blanche to inquire into any subject related to the investigation of Defendant.").

That said, the Court will refrain from ruling on this issue until the defense has had a better opportunity to consider defendant's response. Which will probably be when I hear the question.

This constitutes the decision and order of the court.

Dated: December 2, 2021

_____

United States District Court Judge

BY ECF TO ALL COUNSEL

13