UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/6/21
```

——————————————————————x

UNITED STATES OF AMERICA,

    -against-                                            19 CR 740 (CM)

RAMON SOLLA,

        Defendant.

——————————————————————x

## SUPPLEMENTAL *IN LIMINE* DECISION

McMahon, J.:

    1.    The court has reviewed CW-2's medical records from Equinox, where he was assessed and treated in the spring and summer of 2017. On July 11, 2017, the medical team at Equinox indicated that CW-2 "did not meet the criteria for Bipolar," but nonetheless prescribed Depakote for what was described as "unspecified bipolar disorder," given CW-2's anger management issues and a reported family history of bipolar disorder. The last record is dated two weeks after CW-2 began taking Depakote; it indicates that he felt the drug was "keeping him more calm." There is no indication in the medical records that the CW was disoriented or delusional; his answers to a long list of questions suggest that he was alert and oriented. There is no information in the file provided to me about whether he continued to take Depakote after July 24, 2017, or for how long; the fact that he took the drug three years before the jailhouse conversation that the Government wishes to introduce into evidence is of no relevance to his ability to perceive and recall accurately a conversation held in 2020. Anger issues – which, aside from frequent cannabis use, is all that the records suggest – are not probative of any inability to perceive or recall.

    2.    I have also reviewed CW-2's medical records from the Bureau of Prisons (MCC) for the period. According to the BoP, CW-2 did not show any signes of bipolar disorder and there is no indication in his record that he was taking any psychotropic drugs or medication for any mental health issue. As this is the relevant time, I agree with the Government that cross-examination about his being prescribed Depakote for something that does "not meet the criteria for Bipolar" should be off-limits at the trial. A witness can always be asked whether he was taking any medication that would have effected his ability to perceive events at the time of the events about which he testifies, or if he is taking any medication that would affect his memory at the time he gives his testimony, provided the defense has a good faith basis for believing that the witness is taking such medication. At present I know of no good faith basis that would justify such lines of questioning.

   3.  The Government wishes to introduce at trial certain video recordings made by a confidential human source (CHS) at the MCC, where he and Solla were incarcerated in August 2019. The recordings were made at the behest of agents of the FBI; however, the defendant had not yet been charged in this indictment, so there is no issue of admissibility under *Massiah v. United States*, 377 U.S. 201 (1964). The recordings contain certain statements by the defendant that the Government has a right to introduce as party admissions pursuant to Fed. R. Ev. 801(d)(2)(A). The CHS also speaks on the recordings, and the Government has indicated that it does not intend to call him as a trial witness. The defense objects to the introduction of the recordings as hearsay, unfairly prejudicial, and cumulative. I rule as follows:

     (i)  There is no issue as to the authenticity of the recordings that would preclude their introduction at trial, as long as the Government is prepared to put the agent on the stand. The excerpts are also not impermissibly cumulative or unfairly prejudicial to the defendant within the meaning of Fed. R. Evid. 403. Each proposed excerpt tends to show something that the Government consider important to its case. To the extent that these statements by the defendant confirm other evidence, they are not "piling on," but perfectly appropriate Governmental evidence.

     (ii)  The CHS's statements are admissible, with a limiting instruction about the fact that they are not offered for their truth, to contextualize and make comprehensible the defendant's own independently admissible statements. Second Circuit law has long supported the introduction of such statements without requiring the Government to produce the CHS. *United States v. Dupre*, 462 F. 3d 131, 137 (2d Cir. 2006).

     (iii)  Government 601A will be admitted if the Government begins this excerpt with the word "who" in line 6. I understand the Government's position that the jury will understand that "you" means "Mark" or "he," but I still find the opening lines confusing. The fact that the defendant says that he thought only he (the defendant) knew that "you" had sent one of the victims to kill Tito is perfectly consistent with the word "you" referring to the defendant (the person with whom the CHS is having the conversation, and so the logical "you" in that context). I quite understand the defense's unwillingness to consent to inserting [Mark] into the transcript after the word "you" (which the jury will hear) – it substantially alters the otherwise plain meaning of the words used -- and I do not intend to become a witness in this case by explicating words used in conversations. My ruling of yesterday stands.

     (iv)  Government 601B will be admitted. The defendant does not raise any specific argument other than to suggest that the tension between Mark and Tito is irrelevant in this case. It is not. And by the way, I see that the CHS uses the correct pronoun when referring to Mark in this transcript.

(v)     Government 601C will be admitted as long as the references to Carmelo Sanchez in lines 13-18 are redacted, to eliminate the possibility of any confusion over some unrelated incident.

(vi)     Government 601D will be admitted.

Dated: December 6, 2021

_____
U.S.D.J.

BY ECF TO ALL COUNSEL